**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Bose Corporation,<br><br>*Plaintiff*,<br><br>v.<br><br>ChuangTuTu,<br><br>*Defendant*. | Case No.: 26-cv-10563<br><br>**Judge Mary M. Rowland** |

**DEFENDANT CHUANGTUTU'S CONSOLIDATED MOTION TO DISMISS FOR IMPROPER SERVICE OF PROCESS AND FAILURE TO STATE A CLAIM**

**THE LAW OFFICE OF X. LYU, PLLC**

Xintong Lyu, NYSBA No. 6253975
36-36 Prince St., Ste 309A
Flushing New York 11354
(212) 812-8253
catherine.lyu@lyulawpllc.com

Jian Wang, NYSBA No. 6315865
36-36 Prince St., Ste 309A
Flushing, New York 11354
(212) 812-8253
jwang@lyulawpllc.com

*Attorneys for Defendant ChuangTuTu*

# TABLE OF CONTENTS

**Page**

**INTRODUCTION** ........ 1

**FACTUAL AND PROCEDURAL BACKGROUND** ........ 2

**ARGUMENT** ........ 3

I. PLAINTIFF FAILED TO PROPERLY SERVE CHUANGTUTU UNDER FEDERAL RULE OF CIVIL PROCEDURE 4 ........ 3

A. Legal Standard ........ 3

B. Plaintiff's Attempted Service by Email on ChuangTuTu Was Improper and Should Be Quashed. ........ 4

C. Alternatively, Plaintiff Must Effect Service in Compliance with the Hague Service Convention. ........ 6

II. COUNT I OF THE RENEWED COMPLAINT SHOULD BE DISMISSED ........ 6

A. Legal Standard ........ 6

B. Plaintiff Fails to Allege Facts Sufficient to Establish Willful Trademark Infringement. ........ 7

III. COUNT II OF THE RENEWED COMPLAINT SHOULD BE DISMISSED ........ 9

A. Legal Standard ........ 9

B. Plaintiff Fails to Allege Facts Sufficient to State a Claim Under False Designation of Origin and Unfair Competition. ........ 9

IV. COUNT III OF THE RENEWED COMPLAINT SHOULD BE DISMISSED ........ 12

A. Legal Standard ........ 12

B. Plaintiff Fails to Allege Facts Sufficient to State a Claim Under Violation of 815 ILCS 510 ........ 13

**CONCLUSION** ........ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*CCC Info. Servs., Inc. v. Tractable, Inc.*,
No. 18 CV 7246, 2023 WL 415541 (N.D. Ill. Jan. 25, 2023) ............................................ 13, 14

*Chi-Boy Music v. Charlie Club, Inc.*,
930 F.2d 1224 (7th Cir. 1991) ............................................................................................. 7

*Ent. One UK Ltd. v. 2012Shiliang*,
384 F. Supp. 3d 941 (N.D. Ill. 2019) .................................................................................. 6

*Kahn v. Walmart Inc.*,
107 F.4th 585 (7th Cir. 2024) ............................................................................................. 13

*Kangol LLC v. Hangzhou Chuanyue Silk Import & Export Co.*,
177 F.4th 793 (7th Cir. 2026) ....................................................................................... 1, 4, 5, 6

*Luxottica Grp. S.p.A. v. Li Chen*,
No. 16 C 6850, 2017 WL 836228 (N.D. Ill. Mar. 2, 2017) ................................................... 6

*Microsoft Corp. v. Ram Distribution, LLC*,
625 F. Supp. 2d 674 (E.D. Wis. 2008) ............................................................................. 7, 8

*NBA Props., Inc. v. P'ships & Unincorporated Ass'ns Identified in Schedule "A"*,
549 F.Supp.3d 790 (N.D. Ill. 2021) .................................................................................... 4

*Purepecha Enters., Inc. v. El Matador Spices & Dry Chiles*,
No. 11 C 2569, 2012 WL 3686776 (N.D. Ill. Aug. 24, 2012) .............................................. 13

*Slep-Tone Entertainment Corp. v. Coyne*,
41 F. Supp. 3d 707 (N.D. Ill. 2014) ............................................................................... 12, 13

*Smith v. Montoro*,
648 F.2d 602 (9th Cir. 1981) ............................................................................................... 9

*Ty Inc. v. Perryman*,
306 F.3d 509 (7th Cir. 2002) ...............................................................................................11

*United States v. Ligas*,
549 F.3d 497 (7th Cir. 2008) ............................................................................................... 5

*VitalGo, Inc. v. Kreg Therapeutics, Inc.*,
370 F. Supp. 3d 873 (N.D. Ill. 2019) ................................................................................... 9

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
486 U.S. 694 (1988) ....................................................................................................... 4, 6

*Water Splash, Inc. v. Menon*,
581 U.S. 271 (2017) ............................................................................................................ 4

*Web Printing Controls Co. v. Oxy-Dry Corp.*,
906 F.2d 1202 (7th Cir. 1990) .......... 9

**Statutes**

15 U.S.C. § 1125(a) .......... 9, 10

815 ILCS 510/2(a)(2) .......... 12

815 ILCS 510/2(a)(3) .......... 12

815 ILCS 510/2(a)(5) .......... 12

815 ILCS 510/3 .......... 13

**Other Authorities**

Federal Rule of Civil Procedure 4(f) .......... 3, 4

Federal Rule of Civil Procedure 4(h)(2) .......... 3

Federal Rule of Civil Procedure 12(b)(5) .......... 1, 5, 14, 15

Federal Rule of Civil Procedure 12(b)(6) .......... 1, 12, 15

# INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 12(b)(5), Defendant ChuangTuTu respectfully moves to dismiss this action without prejudice for insufficient service of process and to quash Plaintiff Bose Corporation's ("Plaintiff") purported service by email. If the Court declines to dismiss the action for insufficient service and instead permits Plaintiff to cure the defect, ChuangTuTu alternatively requests that the Court quash the attempted email service, require service in compliance with the Hague Service Convention, and adjust the applicable response deadlines and discovery schedule to account for that ruling and any additional time required to complete service.

In the event that this action is not dismissed pursuant to Rule 12(b)(5), ChuangTuTu further moves, pursuant to Rule 12(b)(6), to dismiss Counts I, II, and III of Plaintiff's Renewed Complaint for failure to state a claim upon which relief can be granted.

Plaintiff obtained authorization for email service and purported to serve ChuangTuTu by that method before the Seventh Circuit issued its intervening decision in *Kangol LLC v. Hangzhou Chuanyue Silk Import & Export Co.*, 177 F.4th 793 (7th Cir. 2026). Under *Kangol*, email service into China is impermissible where the Hague Service Convention applies. ChuangTuTu has identified its operating entity and physical business address in China. The Court should therefore reassess the prior authorization and Plaintiff's attempted service under the governing legal framework. The existence of an earlier order authorizing email service does not itself establish compliance with the Convention. ChuangTuTu requests that the Court quash the attempted service and dismiss the action, subject to the Court's determination that the Convention applies and that the service objection has been preserved.

The Renewed Complaint also contains substantive pleading deficiencies. Count I

characterizes ChuangTuTu's conduct as willful merely because ChuangTuTu knew of Bose and its trademarks when promoting accessories for Bose earbuds. Knowledge of a trademark's existence, however, is distinct from knowledge that a particular use infringes the owner's rights. ChuangTuTu submits that the allegations do not plausibly establish knowing infringement, reckless disregard, or willful blindness and therefore do not adequately support Count I as pleaded.

Count II similarly conflates identifying the products with which an accessory is compatible with identifying the source or sponsor of the accessory itself. The Renewed Complaint acknowledges that ChuangTuTu sells protective covers designed for use with Bose products, yet treats references identifying those products as misleading designations of origin, sponsorship, or affiliation. ChuangTuTu submits that Plaintiff has not adequately pleaded facts supporting that characterization when the challenged references are considered in their full informational context.

Count III relies on the same alleged presentation and, independently, fails to adequately connect the challenged practices to a likelihood of future injury sufficient to support prospective relief under the Illinois Uniform Deceptive Trade Practices Act.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 5, 2026, Plaintiff Bose Corporation ("Plaintiff") filed a complaint against ChuangTuTu, among other defendants, alleging trademark infringement. *Bose Corp. v. Partnerships Identified in Schedule "A"*, No. 1:26-cv-00011, Dkt. 1 (N.D. Ill.). On January 23, 2026, Plaintiff moved for authorization to serve Defendants by email. *Id.*, Dkt. 14. The Court granted that motion on January 26, 2026. *Id.*, Dkt. 17. Plaintiff purported to serve ChuangTuTu and other defendants by email on February 18, 2026. *Id.*, Dkt. 25.

On April 28, 2026, ChuangTuTu moved to dismiss the claims against it for improper joinder and to dissolve the preliminary injunction. *Id.*, Dkt. 78. On August 14, 2026, the Court

granted ChuangTuTu's motion in part. Although the Court declined to dissolve the preliminary injunction against ChuangTuTu, it modified the asset restraint to $6,082 and directed that the claims against ChuangTuTu be severed into a separate action if the parties were unable to resolve their dispute. *Id.*, Dkt. 114. On August 28, 2026, the parties filed a joint status report advising the Court that they had been unable to reach a settlement and requesting severance. *Id.*, Dkt. 117.

The Court subsequently severed the claims against ChuangTuTu into a separate action, *Bose Corp. v. ChuangTuTu*, No. 1:26-cv-10563 (N.D. Ill.), and directed Plaintiff to file a renewed complaint limited to its allegations against ChuangTuTu. Dkt. 1. After Plaintiff failed to file the renewed complaint for nearly one month, ChuangTuTu moved to dismiss for failure to prosecute and failure to comply with the Court's severance order, to dissolve the preliminary injunction, or, alternatively, for an order to show cause. Dkt. 2.

On October 14, 2026, Plaintiff filed its Renewed Complaint. Dkt. 5. In light of that filing, the Court denied ChuangTuTu's motion to dismiss for failure to prosecute and directed ChuangTuTu to respond to the Renewed Complaint by November 5, 2026. Dkt. 7.

## ARGUMENT

### I. PLAINTIFF FAILED TO PROPERLY SERVE CHUANGTUTU UNDER FEDERAL RULE OF CIVIL PROCEDURE 4

#### A. Legal Standard

A foreign corporation may be served outside any judicial district of the United States in any manner prescribed by Rule 4(f). *See* Fed. R. Civ. P. 4(h)(2). Rule 4(f), in turn, authorizes service in a foreign country by: (1) "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents"; (2) "by a method that is reasonably calculated to give notice," if there is "no internationally agreed means"; or (3) "by other means not

prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f).

The Hague Service Convention, to which both the United States and China are parties, was adopted in 1965 to "simplify, standardize, and generally improve the process of serving documents abroad." *Water Splash, Inc. v. Menon*, 581 U.S. 271, 273 (2017). Where the Hague Service Convention applies, its procedures are mandatory. "By virtue of the Supremacy Clause, U.S. Const., Art. VI, the Convention pre-empts inconsistent methods of service [] in all cases to which it applies." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988).

This Circuit held that email service into China is prohibited by the Hague Convention. *Kangol*, 177 F.4th at 801. "District courts handling Schedule A cases typically require plaintiffs to make 'reasonably diligent efforts to ascertain and verify [the] defendant's mailing address' before deeming the defendant's address unknown." *Id*. at 799 (quoting *NBA Props., Inc. v. P'ships & Unincorporated Ass'ns Identified in Schedule "A"*, 549 F.Supp.3d 790, 796 (N.D. Ill. 2021)).

**B. Plaintiff's Attempted Service by Email on ChuangTuTu Was Improper and Should Be Quashed.**

Plaintiff's attempted service must be evaluated under the Hague Service Convention and the Seventh Circuit's intervening decision in *Kangol*. 177 F.4th at 793. Plaintiff obtained authorization for email service on January 26, 2026, and purported to serve ChuangTuTu by email on February 18, 2026. *Bose Corp.*, No. 1:26-cv-00011, Dkts. 17, 25. The existence of that authorization, however, does not resolve whether the method employed was permissible under the governing international agreement.

Rule 4(f)(3) permits court-directed alternative service only by means not prohibited by international agreement. In *Kangol*, the Seventh Circuit held that, when the Hague Service Convention applies, it supplies the permissible methods of service and excludes methods not authorized by its provisions. 177 F.4th at 799–802. Because the Convention does not authorize

service by email in China, such service violates both the Convention and Rule 4(f)(3). *Id*. Thus, the relevant question is not merely whether Plaintiff followed the January 26 order, but whether that order authorized a method consistent with the Convention.

In turn, the Court should reconsider its prior authorization to the extent necessary to conform it to the governing law. An intervening change in law provides a recognized basis for reconsidering a prior ruling. *United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008) ("A district court may reconsider a prior decision when there has been a significant change in the law or facts since the parties presented the issue to the court…"). Plaintiff's reliance on the earlier authorization cannot, by itself, establish that the attempted service satisfies the Convention. The Court must instead assess the service objection under the legal framework that now governs this action.

That assessment requires a defendant-specific determination of whether the Convention applies. Here, ChuangTuTu has already submitted the declaration along with evidence of its actual address and corporate information. *Bose Corp.*, No. 1:26-cv-00011, Dkt. 80-5 at 11. The information provided identifies ChuangTuTu as the Amazon storefront operated by Changsha Shi Chuang Tu E-commerce Co., Ltd., a Chinese company with the following address:

> Changsha Shi Chuang Tu E-commerce Co., Ltd.
> No. 266, Guyuan Road, Lugu Street, Xiangjiang New Area
> Qixin Constellation Apartment, Building 1, Unit 1142
> Changsha City, Hunan 410005, China.

Accordingly, because Plaintiff attempted service by email rather than through a method authorized by the Hague Service Convention, ChuangTuTu respectfully requests that the Court quash the attempted service and dismiss the claims against it without prejudice under Rule 12(b)(5), provided that the Court determines the Convention applies and that ChuangTuTu has preserved its objection to service. Alternatively, the Court should require Plaintiff to effect service in compliance with the Convention.

### C. Alternatively, Plaintiff Must Effect Service in Compliance with the Hague Service Convention.

If the Court declines to dismiss the action and instead affords Plaintiff an opportunity to cure the defective service, it should quash the attempted email service and require Plaintiff to proceed through a method authorized by the Hague Service Convention. Where the Convention applies, its procedures are mandatory, and a court may not substitute a method inconsistent with its requirements merely because that method is more convenient. *Schlunk*, 486 U.S. at 699; *Kangol*, 177 F.4th at 800–02.

ChuangTuTu therefore requests, in the alternative, an order quashing the attempted email service, modifying the prior authorization insofar as it permits service on ChuangTuTu inconsistent with the Convention, and directing Plaintiff to effect service in compliance with the Convention. Plaintiff should be required to document the submission of its service request and file the resulting certificate or other authorized proof of service when available. The Court should also adjust the applicable response deadlines and discovery schedule, as appropriate, to account for its ruling on this motion and any additional time required to complete service, rather than leave the parties to infer the procedural consequences of that ruling.

## II. COUNT I OF THE RENEWED COMPLAINT SHOULD BE DISMISSED

### A. Legal Standard

A court may find willful infringement when a defendant "had knowledge that [its] conduct constituted infringement or where [it] showed a reckless disregard for the owner's rights." *Ent. One UK Ltd. v. 2012Shiliang*, 384 F. Supp. 3d 941, 952 (N.D. Ill. 2019) (quoting *Luxottica Grp. S.p.A. v. Li Chen*, No. 16 C 6850, 2017 WL 836228, at *2 (N.D. Ill. Mar. 2, 2017)). A defendant's knowledge can be inferred from conduct. *Id*.

Willfulness may also be established through willful blindness to the trademark owner's

rights. *Microsoft Corp. v. Ram Distribution, LLC*, 625 F. Supp. 2d 674, 684 (E.D. Wis. 2008). To establish willful blindness, however, the defendant must suspect wrongdoing and deliberately fail to investigate; a "[s]imple failure to take precautions against counterfeiting is insufficient." *Id*. Prior notice followed by infringing conduct may provide persuasive evidence of willfulness. *Id*. (quoting *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1227 (7th Cir. 1991)).

**B. Plaintiff Fails to Allege Facts Sufficient to Establish Willful Trademark Infringement.**

In support of its claim for willful trademark infringement, Plaintiff merely alleges that "Defendant knew of Bose and the Bose Trademarks when using those marks to promote accessories for Bose earbuds. As such, its conduct was willful." Dkt. 5 ¶ 31. This allegation conflates awareness of the Bose trademarks with knowledge that a particular use of those marks constitutes infringement. Even accepted as true, the allegation establishes only that ChuangTuTu knew of Bose and its trademarks when promoting accessories for Bose products. Without more, it does not establish that ChuangTuTu knew its challenged use was infringing, recklessly disregarded Bose's rights, or deliberately avoided investigating suspected infringement.

The Court's prior discussion of intent illustrates this distinction. In addressing ChuangTuTu's motion to dissolve the preliminary injunction, the Court explained:

> "Though ChuangTuTu admits that it uses the Bose Trademark to describe its products' compatibility with certain Bose Products, the Court cannot say that this, standing alone, rises to the level of an intent to deceive consumers into believing Bose is the seller of their products."

*Bose Corp.*, No. 1:26-cv-00011, Dkt. 115 at 6. The Court further observed that Bose had presented no other evidence of intent. *Id*. at 6–7. Although the Court ultimately found that Bose had demonstrated a likelihood of success on the underlying infringement claim, it did not infer an intent to deceive merely from ChuangTuTu's use of the mark to describe product compatibility. *Id*.

The September 9, 2025 screenshot provides relevant context for that distinction. The listing identifies ChuangTuTu as the seller, separately identifies a brand other than Bose in the product details, and lists "Bose Ultra Open Earbuds" under "Compatible Devices."




*Id.*, Dkt. 13-4 at 28. Those features do not conclusively resolve whether the listing was likely to cause confusion, but they underscore why awareness of the Bose trademarks cannot automatically be equated with knowledge of infringement.

The allegation in the Renewed Complaint does not bridge that gap. It identifies knowledge of the marks and their use in promoting compatible accessories, then labels the conduct willful without explaining why that use supports an inference of knowing infringement, reckless disregard, or willful blindness. *Compare* Dkt. 5 ¶ 31, *with Microsoft*, 625 F. Supp. 2d at 684 ("Simple failure to take precautions against counterfeiting is insufficient."). The allegation does not identify suspected wrongdoing that ChuangTuTu deliberately declined to investigate. Nor does it identify a preexisting infringement warning followed by the challenged conduct. Instead, the asserted

inference rests on knowledge of Bose and its trademarks alone.

Accordingly, the allegation in paragraph 31 is insufficient, standing alone, to support Plaintiff's characterization of ChuangTuTu's conduct as willful. Because Count I of the Renewed Complaint is expressly framed as a claim for willful trademark infringement, Plaintiff's failure to adequately plead willfulness warrants dismissal of Count I in its entirety.

## III. COUNT II OF THE RENEWED COMPLAINT SHOULD BE DISMISSED

### A. Legal Standard

To state a claim for false designation of origin and unfair competition under 15 U.S.C. § 1125(a), a plaintiff must allege that: (1) the defendant used a false designation of origin or false representation in connection with its goods; (2) the defendant caused those goods to enter interstate commerce; and (3) consumers are likely to be confused by the false representation. *VitalGo, Inc. v. Kreg Therapeutics, Inc.*, 370 F. Supp. 3d 873, 889 (N.D. Ill. 2019) (citing *Web Printing Controls Co. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1204 (7th Cir. 1990)).

With respect to the first element, false designation of origin claims take two basic forms: "passing off" and "reverse passing off." *Id*. "Passing off" involves "the selling of a good or service of one's own creation under the name or mark of another." *Web Printing Controls*, 906 F.2d at 1203 n.1 (quoting *Smith v. Montoro*, 648 F.2d 602, 604 (9th Cir. 1981)). Reverse passing off occurs "when a person removes or obliterates the original trademark, without authorization, before reselling goods produced by someone else." *Id*.

To satisfy the third element, a plaintiff need only show a likelihood that consumers will be confused by the false representation. *VitalGo*, 370 F. Supp. 3d at 889.

### B. Plaintiff Fails to Allege Facts Sufficient to State a Claim Under False Designation of Origin and Unfair Competition.

Count II alleges that ChuangTuTu used the BOSE trademarks in its listing titles,

promotional imagery, and compatible-device information, and characterizes that presentation as a misleading designation of source or sponsorship. Dkt. 5 ¶¶ 35–36. Paragraph 34 incorporates the preceding factual allegations, which must be considered together with the allegations within Count II. Those allegations, however, must plausibly identify a misleading representation of origin, sponsorship, or affiliation—not merely the use of the BOSE name to identify the products with which Defendant's accessories are compatible. Without such allegations, Count II fails to satisfy the first element of a claim for false designation of origin and unfair competition under 15 U.S.C. § 1125(a).

First, the Renewed Complaint itself identifies a compatibility relationship that gives the challenged references a legitimate informational purpose. Plaintiff alleges that ChuangTuTu sells silicone protective covers for Bose Ultra Open Earbuds, rather than the earbuds themselves. Dkt. 5 ¶¶ 1, 17. It further acknowledges that the accused products are designed and marketed for use with Bose audio equipment. *Id.* ¶ 22. Against that background, identifying "Bose Ultra Open Earbuds" communicates which underlying product the accessory accommodates. That relationship must be considered when evaluating whether the reference identifies the compatible device or instead misrepresents the accessory's source.

Paragraph 23 particularly illustrates the problem with Plaintiff's reasoning. It alleges that identifying Bose Ultra Open Earbuds in the expressly labeled "Compatible Devices" field suggests that Bose is the source of the accessory. Dkt. 5 ¶ 23. But the function of that field, as its label indicates, is to identify a compatible device. Plaintiff does not allege that its earbuds are incompatible with ChuangTuTu's covers. Its allegation instead treats the identification of a Bose-specific device as itself suggestive of Bose's manufacture or sponsorship. *Id.* ¶ 35 ("Defendant used the BOSE Trademarks, and misleading source and sponsorship designations, in commerce by

offering for sale its earbud case covers"). This inference disregards the informational context in which the reference appears. An accurate statement identifying the device an accessory fits does not become a false designation merely because the device is identified by its manufacturer's trademark.

In *Ty Inc. v. Perryman*, 306 F.3d 509 (7th Cir. 2002), the Seventh Circuit explained that an aftermarket manufacturer may truthfully identify the branded products for which its goods are intended, using the example of a manufacturer advertising mufflers for installation in Toyota vehicles. *Id*. at 512. Here, ChuangTuTu's references to Bose Ultra Open Earbuds likewise identify the products for which its protective covers are intended—a relationship the Renewed Complaint expressly acknowledges. Dkt. 5 ¶ 22. The use of Bose's name for that informational purpose does not, without more, establish that ChuangTuTu "passed off" its own accessories as Bose products.

Second, the leading placement of "Bose" in the listing titles should not be treated as a conclusive source designation without regard to the complete product description. Plaintiff identifies titles including "Bose Ultra Open Earbuds Case with Cleaner Kit & Carabiner" and "Bose Ultra Open Earbuds Silicone Case Cover." Dkt. 5 ¶ 18. ChuangTuTu does not dispute, for purposes of this motion, the pleaded wording or placement. Its argument concerns the inference to be drawn from those allegations: the titles identify both a particular device and an accessory designed for that device. Merely identifying a brand does not eliminate the need to consider the complete wording and the compatibility relationship acknowledged elsewhere in the pleading. Plaintiff, however, intentionally conflates identifying a compatible device with identifying the source of the accessory. *Id*. ¶ 19 ("By placing Bose at the beginning of the product listing titles …, Defendant presented its case covers in a manner likely to suggest a source, sponsorship, approval, or affiliation with Bose."); ¶ 22 ("Defendant's use of [Bose] logo … reinforces the impression of

a common source or sponsorship."); ¶ 23 ("Defendant continues to suggest that the source of the Infringing Products is Bose rather than simply indicating compatibility.").

The allegation that Plaintiff did not authorize ChuangTuTu to use its marks as a source designation likewise does not answer whether the challenged references actually functioned as such a designation. Dkt. 5 ¶ 14. The distinction is between attracting customers seeking accessories compatible with Bose products and misleading those customers about who made or approved the accessories. Count II must plausibly allege the latter; it cannot rest on the premise that the former necessarily infringes Bose's rights.

Accordingly, ChuangTuTu submits that Plaintiff fails to plausibly allege that Defendant used the BOSE trademarks as source designations for its accessories or to suggest Bose's sponsorship or affiliation. Count II improperly equates the identification of Bose-compatible products with a misleading designation of the accessories' origin or sponsorship and should therefore be dismissed under Rule 12(b)(6).

## IV. COUNT III OF THE RENEWED COMPLAINT SHOULD BE DISMISSED

### A. Legal Standard

The Illinois Uniform Deceptive Trade Practices Act ("IUDTPA") prohibits, among other conduct, practices creating a likelihood of confusion concerning the source, sponsorship, approval, affiliation, connection, or association of goods or services, and representations that goods or services possess sponsorship or approval they do not have. 815 ILCS 510/2(a)(2), (3), (5). Where an IUDTPA claim rests on the same alleged trademark misuse as a Lanham Act claim, the confusion issues ordinarily are analyzed together. *Slep-Tone Entertainment Corp. v. Coyne*, 41 F. Supp. 3d 707, 712–13 (N.D. Ill. 2014).

The Act's remedial requirements nevertheless warrant separate analysis. "[T]he IUDTPA

does not provide a private cause of action for damages." *Purepecha Enters., Inc. v. El Matador Spices & Dry Chiles*, No. 11 C 2569, 2012 WL 3686776, at *16 (N.D. Ill. Aug. 24, 2012). It only "authorizes private suits for injunctive relief only." *CCC Info. Servs., Inc. v. Tractable, Inc.*, No. 18 CV 7246, 2023 WL 415541, at *4 (N.D. Ill. Jan. 25, 2023). A plaintiff seeking prospective relief must adequately allege a likelihood of future injury. *Kahn v. Walmart Inc.*, 107 F.4th 585, 606 (7th Cir. 2024).

### B. Plaintiff Fails to Allege Facts Sufficient to State a Claim Under Violation of 815 ILCS 510.

Count III incorporates paragraphs 1–27 and alleges that Defendant's presentation creates confusion concerning source, sponsorship, approval, affiliation, connection, or association. Dkt. 5 ¶¶ 39–41. It relies on the same titles, images, and compatibility references challenged under Count II. Accordingly, ChuangTuTU's objections to treating those references as necessarily misleading apply equally to Count III. The state-law label does not eliminate the need to plausibly allege a deceptive presentation rather than the accurate identification of the products for which an accessory is intended. *Slep-Tone*, 41 F. Supp. 3d at 712–13.

Separately, Count III requires a distinct examination of Plaintiff's asserted future injury. Section 3 of the IUDTPA authorizes injunctive relief for a person likely to be damaged by another's deceptive trade practice. 815 ILCS 510/3. Although proof of monetary damage, lost profits, or intent to deceive is unnecessary, Plaintiff must adequately allege a likelihood of future injury to support prospective relief. *Kahn*, 107 F.4th at 606. Thus, allegations that completed conduct caused past business injury do not, without more, establish entitlement to an injunction under the Act.

In *CCC Info. Servs., Inc. v. Tractable, Inc.*, this Court expressly explained that "[p]ast harm is not necessarily evidence of future harm, and where a party is now aware of another party's past deceptive practices, that party is not likely to be harmed by the practices in the future." 2023 WL

415541, at *4. Specifically, the plaintiff alleged that a competitor had obtained access to its software platform through deceptive practices and used that access to misappropriate proprietary information. *Id*. After the plaintiff terminated the relevant licensing agreement, however, the complaint did not plausibly allege that the defendant continued accessing the platform or would again obtain access through aliases or fictitious companies. *Id*. The Court distinguished alleged continuing consequences of the prior conduct from a sufficiently pleaded likelihood of future injury caused by the deceptive practices themselves and dismissed the IUDTPA count without prejudice. *Id*.

Here, Plaintiff fails to adequately plead a likelihood of future injury caused by ChuangTuTu. The Court entered a preliminary injunction against ChuangTuTu on March 18, 2026. *Bose Corp.*, No. 1:26-cv-00011, Dkt. 49; *see also id.*, Dkt. 115 at 3. On August 14, 2026, the Court declined to dissolve that injunction and modified the asset restraint to $6,082. *Id.*, Dkts. 114–115. Accordingly, Bose has already obtained enforceable interim relief; this is not a case in which the alleged conduct remains wholly unrestrained pending adjudication. In addition, ChuangTuTu's listings for the accused products have already been removed pursuant to the preliminary injunction. Bose therefore fails to adequately allege a likelihood of future injury.

Accordingly, ChuangTuTu requests dismissal of Count III without prejudice because the Renewed Complaint does not adequately connect the challenged practices to a sufficiently pleaded likelihood of future injury.

## CONCLUSION

For the foregoing reasons, Defendant ChuangTuTu respectfully requests that the Court quash Plaintiff's attempted email service and dismiss this action without prejudice pursuant to Rule 12(b)(5). Alternatively, if the Court permits Plaintiff to cure the service defect, ChuangTuTu

requests that the Court modify the prior service authorization as necessary, direct Plaintiff to effect service in compliance with the Hague Service Convention and submit appropriate proof of service, and adjust the applicable response deadlines and discovery schedule accordingly.

In the event that the action is not dismissed pursuant to Rule 12(b)(5), ChuangTuTu further requests that the Court dismiss Counts I, II, and III of the Renewed Complaint pursuant to Rule 12(b)(6) for the reasons set forth above, with dismissal of Count III without prejudice. ChuangTuTu also requests such other and further relief as the Court deems just and proper.

Dated: October 26, 2026.

**THE LAW OFFICE OF X. LYU, PLLC**

By: */s/ Xintong Lyu*
Xintong Lyu, NYSBA No. 6253975
36-36 Prince St., Ste 309A
Flushing New York 11354
(212) 812-8253
catherine.lyu@lyulawpllc.com

Jian Wang, NYSBA No. 6315865
36-36 Prince St., Ste 309A
Flushing, New York 11354
(212) 812-8253
jwang@lyulawpllc.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 26, 2026, the foregoing document was filed electronically with the Clerk of the Court for the United States District Court for the Northern District of Illinois using the Court's Electronic Case Filing System, which will send notification to all attorneys of record in this case.

I certify that all parties in this case are represented by counsel who are CM/ECF participants.

By: */s/ Xintong Lyu*
Xintong Lyu